# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| Mark Feick, on behalf of himself and all others similarly situated, | |
| *Plaintiffs*, | **Case No. _____** |
| v. | **CLASS ACTION COMPLAINT** |
| KONINKLIJKE PHILIPS N.V.; PHILIPS NORTH AMERICA LLC; and PHILIPS RS NORTH AMERICA LLC, | **DEMAND FOR JURY TRIAL** |
| *Defendants*. | |

Plaintiff Mark Feick ("Plaintiff"), on behalf of himself, the class and subclass of all others similarly situated as defined below, for his complaint against Defendants Koninklijke Philips N.V. ("Royal Philips"), Philips North America LLC ("Philips NA"), and Philips RS North America LLC ("Philips RS") (collectively, Royal Philips, Philips NA, and Philips RS are "Philips" or the "Defendants"), alleges the following based on (a) personal knowledge, (b) the investigation of counsel, and (c) information and belief.

## INTRODUCTION

1.      Plaintiff brings this action on behalf of himself and proposed classes of purchasers and users of Continuous Positive Airway Pressure (CPAP) and Bi-Level Positive Airway Pressure (Bi-Level PAP) devices and mechanical ventilators manufactured by Philips, which contain polyester-based polyurethane sound abatement foam ("PE-PUR Foam"). These devices are commonly used to treat sleep apnea, and ventilators, which treat respiratory failure. In general, all of these devices blow air into patients' airways. CPAP and BiPAP machines are intended for daily use, and ventilators are used continuously while needed. Without these

devices, some patients may experience severe symptoms, including heart attack, stroke, and death by asphyxiation.

2.    On April 26, 2021, Philips made a public announcement disclosing it had determined there were risks that the PE-PUR Foam used in certain CPAP, Bi-Level PAP, and mechanical ventilator devices it manufactured may degrade or off-gas under certain circumstances.

3.    On June 14, 2021, Royal Philips issued a recall in the United States of its CPAP, Bi-Level PAP, and mechanical ventilator devices containing PE-PUR Foam, because Philips had determined that (a) the PE-PUR Foam was at risk for degradation into particles that may enter the devices' pathway and be ingested or inhaled by users, and (b) the PE-PUR Foam may off-gas certain chemicals during operation.[1] Philips further disclosed the potential risks of both degradation and chemical exposure include "headache, irritation, inflammation, respiratory issues[,] … hypersensitivity, nausea/vomiting, and possible toxic and carcinogenic effects."[2]

4.    Philips has disclosed that the absence of visible particles in the devices does not mean that PE-PUR Foam breakdown has not already begun. Philips reported that lab analysis of the degraded foam reveals the presence of harmful chemicals, including: Toluene Diamine ("TDA"), Toluene Diisocyanate ("TDI"), and Diethylene Glycol ("DEG").[3]

---

[1] *Philips issues recall notification\* to mitigate potential health risks related to the sound abatement foam component in certain sleep and respiratory care devices*, PHILIPS (June 14, 2021); https://www.philips.com/a-w/about/news/archive/standard/news/press/2021/20210614-philips-issues-recall-notification-to-mitigate-potential-health-risks-related-to-the-sound-abatement-foam-component-in-certain-sleep-and-respiratory-care-devices.html (Last Accessed July 9, 2021).
[2] *Id.*
[3] Philips Sleep and Respiratory Care Update; Clinical information for physicians, https://www.philips.com/c-dam/b2bhc/master/landing-pages/src/update/documents/philips-recall-clinical-information-for-physicians-and-providers.pdf (accessed June 27, 2021).

5.      Prior to issuing the Recall Notice, Philips received complaints regarding the presence of black debris/particles within the airpath circuit of its devices (extending from the device outlet, humidifier, tubing, and mask). Philips also received reports of headaches, upper airway irritation, cough, chest pressure and sinus infection from users of these devices.

6.      In its Recall Notice, Philips disclosed that the potential risks of particulate exposure to users of these devices include: irritation (skin, eye, and respiratory tract), inflammatory response, headache, asthma, adverse effects to other organs (*e.g.*, kidneys and liver), and toxic carcinogenic affects. The potential risks of chemical exposure due to off-gassing of PE-PUR Foam in these devices include: headache/dizziness, irritation (eyes, nose, respiratory tract, skin), hypersensitivity, nausea/vomiting, toxic and carcinogenic effects.

7.      In the Recall Notice, Philips recommended that patients using the recalled CPAP and Bi-Level PAP devices immediately discontinue using their devices and that patients using the recalled ventilators for life-sustaining therapy consult with their physicians regarding alternative ventilator options.

8.      Plaintiff received confirmation that his CPAP device was subject to recall. As a result, Plaintiff purchased and paid good money for a product that is worthless and dangerous.

9.      Plaintiff seeks to recover damages based on, *inter alia*, Philips' breach of express warranty, breach of implied warranties, misrepresentations, omissions, and breaches of state consumer protection laws in connection with its manufacture, marketing and sales of devices containing PE-PUR Foam on behalf of himself and the proposed Class Members. In addition, Plaintiff seeks medical monitoring damages for users of Philips' devices identified in the Recall Notice, who are at risk of suffering from serious injury, including irritation (skin, eye, and

respiratory tract), inflammatory response, headache, asthma, adverse effects to other organs (*e.g.*, kidneys and liver) and toxic carcinogenic affects.

## PARTIES

10.    Plaintiff purchased and used the CPAP device for personal use as they related to a sleep apnea diagnosis.

11.    Plaintiff Mark Feick resides in Rostraver, Pennsylvania. Plaintiff purchased the CPAP Device in January 2020. The machine was defective and was replaced in March 2020.

12.    Plaintiff Feick first began experiencing symptoms shortly after he purchased the CPAP device. His symptoms included breathing and lung problems including stage 2 silicosis.

13.    Plaintiff Feick sought treatment for his symptoms from March 2020 onwards with a series of treating physicians. As of the filing of this complaint, his symptoms are ongoing. Plaintiff Feick, would not have purchased the CPAP device if he had known it was defective.

14.    Plaintiff Feick is seeking a refund, replacement with a non-defective device, and costs for ongoing medical monitoring, and all other appropriate damages for all the injuries he has suffered as a result of the defective CPAP device.

15.    Defendant Royal Philips is a Dutch multinational corporation with its principal place of business located in Amsterdam, Netherlands. Royal Philips is the parent company of the Philips Group of healthcare technology businesses, including Connected Care businesses focusing on Sleep & Respiratory Care. Royal Philips holds directly or indirectly 100% of its subsidiaries Philips NA and Philips RS.[4] Upon information and belief, Royal Philips controls

---

[4] Philips 2020 annual filing with the SEC, fn. 8, https://www.sec.gov/Archives/edgar/data/313216/000031321621000008/phg-exhibit8.htm (accessed June 30, 2021).

Philips NA and Philips RS in the manufacturing, selling, distributing, and supplying of the recalled CPAP, Bi-Level PAP, and mechanical ventilator devices.[5]

16.     Defendant Philips NA is a Delaware corporation with its principal place of business located at 222 Jacobs Street, Floor 3, Cambridge, Massachusetts 02141. Philips NA is a wholly-owned subsidiary of Royal Philips.

17.     Defendant Philips RS is a Delaware corporation with its principal place of business located at 6501 Living Place, Pittsburgh, Pennsylvania 15206. Philips RS is a wholly-owned subsidiary of Royal Philips. Philips RS was formerly operated under the business name Respironics, Inc. ("Respironics"). Royal Philips acquired Respironics in 2008.[6]

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction over this class action pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, because the matter in controversy exceeds $5 million, exclusive of interest and costs, and is a class action in which Plaintiff and some members of the Class are citizens of states different than Defendants. See 28 U.S.C. § 1332(d)(2)(A).

19.     Venue is proper in this District because Philips North America LLC is headquartered in this District and because a substantial part of the events or omissions giving rise to the claim occurred in this District.

20.     The Court has personal jurisdiction over the Defendants because Defendants conduct substantial business in this District, and the events giving rise to Plaintiffs' claims arise

---

[5] Philips 2020 annual filing with the SEC, https://www.sec.gov/ix?doc=/Archives/edgar/data/0000313216/000031321621000008/phg-20201231.htm (accessed June 30, 2021).

[6] Philips announces completion of tender offer to acquire Respironics, WEB WIRE, https://www.webwire.com/ViewPressRel.asp?aId=61199 (accessed June 27, 2021).

out of and relate to Defendants' contacts with this District. Moreover, Defendant Philips RS has

its principal place of business in the Commonwealth. Defendants Philips RS and Philips NA are

controlled by their parent Royal Philips. Defendants' affiliations with this District are so

continuous and systematic as to render them essentially at home in the Commonwealth. Further,

Defendants have transacted business, maintained substantial contacts, purposefully targeted

consumers and medical professionals for sales of its devices and/or committed overt acts in

furtherance of the unlawful acts alleged in this Complaint in this District, as well as throughout

the United States. The unlawful acts of Defendants have been directed at, targeted, and have had

the effect of causing injury to persons residing in, located in, or doing business in this District, as

well as throughout the United States.

## FACTUAL BACKGROUND

### I.    Continuous Positive Airway Pressure Therapy

21.    Continuous Positive Airway Pressure ("CPAP") therapy is a common nonsurgical

treatment primarily used to treat sleep apnea. CPAP therapy typically involves the use of a hose

and a nasal or facemask device that delivers constant and steady air pressure to an individual's

throat to help individuals breathe.

22.    Sleep apnea is a common sleep disorder characterized by repeated interruptions in

breathing throughout an individual's sleep cycle. These interruptions, called "apneas," are caused

when the soft tissue in an individual's airway collapses. The airway collapse prevents oxygen

from reaching the individual's lungs which can cause a buildup of carbon dioxide. If the

individual's brain senses the buildup of carbon dioxide, it will briefly rouse the individual from

sleep so that the individual's airway can reopen. Often, these interruptions are so brief that the

individual will not remember. Despite the brevity of the interruptions, the sleep cycle disruption

caused by sleep apnea can dramatically impact a person's lifestyle, including negatively impacting energy, mental performance, and long-term health. CPAP therapy helps treat sleep apnea by preventing the person's airway from collapsing while breathing during sleep cycles, which can help prevent interruptions in breathing.

## II.    **Bi-Level Positive Airway Pressure Therapy**

23.    Bi-Level Positive Airway Pressure ("BiPAP") therapy is a common alternative to CPAP therapy for treating sleep apnea. Similar to CPAP therapy, BiPAP therapy is nonsurgical and involves the use of a nasal or facemask device to maintain air pressure in an individual's airway. BiPAP therapy is distinguishable from CPAP therapy because Bi-Level PAP devices deliver two alternating levels—inspiratory and expiratory—of pressurized air into a person's airway, rather than the single continuous level of pressurized air delivered by a CPAP device. The inspiratory positive airway pressure assists a person as a breath is taken in. Conversely, the expiratory positive airway pressure is applied to allow a person to comfortably breathe out. Bi-Level PAP devices deliver one level of pressurize air (the inspiratory positive level) to assist as a person inhales, and another level (the expiratory level) as a person exhales.

## III.    **Mechanical Ventilation**

24.    Mechanical ventilation is a treatment to help people breathe when they find it difficult or are unable to breathe on their own. A mechanical ventilator pushes airflow into the patient's lungs to help them breathe. Mechanical ventilation may be invasive ventilation with a tube inserted into the patient's airway, performed in the intensive care unit in the hospital or a long-term institutional setting. Non-invasive ventilation can be used at home by people with respiratory difficulties.

## SUBSTANTIVE ALLEGATIONS

25.     Philips developed, marketed, and sold a variety of CPAP and Bi-Level PAP respirator devices and mechanical ventilators under its "Sleep & Respiratory Care" segment of its business designed to assist individuals with a number of sleep, breathing, and respiratory conditions, including obstructive sleep apnea, central sleep apnea, complex sleep apnea syndrome, and Chronic Obstructive Pulmonary Disease (COPD), as well as to assist those individuals requiring invasive and non-invasive ventilators for acute and sub-acute hospital environments. Philips' CPAP and Bi-Level PAP respirator devices and its mechanical ventilators typically cost several hundred, if not thousands of dollars. Philips has sold millions of these devices in the United States.

### III.     Philips' Sleep & Respiratory Care Devices Endangered Users

26.     On April 26, 2021, in its Quarterly Report for Q1 2021, Philips disclosed for the first time, under a section entitled "Regulatory Update," that device user reports had led to a discovery that the type of PE-PUR Foam Philips used to minimize noise in several CPAP and Bi-Level PAP respirators and mechanical ventilators posed health risks to its users. Specifically, Philips disclosed that "the [PE-PUR] foam may degrade under certain circumstances, influenced by factors including use of unapproved cleaning methods, such as ozone[], and certain environmental conditions involving high humidity and temperature."[7]

27.     Seven weeks later, on June 14, 2021, Philips announced a recall of numerous models of CPAP and Bi-Level PAP devices, as well as a variety of its mechanical ventilators "to address identified potential health risks related to the polyester-based polyurethane (PE-PUR)

---

[7] First Quarter Results, PHILIPS (Apr. 26, 2021),
https://www.results.philips.com/publications/q121/downloads/pdf/en/philips-first-quarter-results-2021-report.pdf (accessed June 27, 2021).

sound abatement foam component in these devices."[8] Specifically, Philips announced that it had

determined that the "PE-PUR foam may degrade into particles which may enter the device's air

pathway and be ingested or inhaled by the user, and the foam may off-gas certain chemicals."[9] In

total, Philips announced that "[b]etween 3 million and 4 million" devices are targeted in the

recall.[10]

28.    The list of the devices recalled by Philips (the "Recalled Devices") include:

| Philips CPAP and Bi-Level PAP Devices Manufactured Before April 26, 2021 Subject to Recall[11] | |
| --- | --- |
| **Device Name/Model Type** | **Type** |
| E30 (Emergency Use Authorization) | Continuous Ventilator, Minimum Ventilatory Support, Facility Use |
| DreamStation ASV | Continuous Ventilator, Non-life Supporting |
| DreamStation ST, AVAPS | |
| SystemOne ASV4 | |
| C Series ASV | |
| C Series S/T and AVAPS | |
| OmniLab Advanced Plus | |
| SystemOne (Q Series) | Non-continuous Ventilator |
| DreamStation | |
| DreamStation GO | |
| Dorma 400 | |

---

[8] *Philips issues recall notification\* to mitigate potential health risks related to the sound abatement foam component in certain sleep and respiratory care devices*, PHILIPS (June 14, 2021), https://www.philips.com/a-w/about/news/archive/standard/news/press/2021/20210614-philips-issues-recall-notification-to-mitigate-potential-health-risks-related-to-the-sound-abatement-foam-component-in-certain-sleep-and-respiratory-care-devices.html (accessed June 27, 2021).

[9] *Id.*

[10] Associated Press, *Philips recalls ventilators, sleep apnea machines due to health risks*, NBC NEWS, https://www.nbcnews.com/business/consumer/philips-recalls-ventilators-sleep-apnea-machines-due-health-risks-n1270725 (accessed June 27, 2021).

[11] *See* Medical Device recall notification (U.S. only) / field safety notice (International Markets), PHILIPS RESPIRONICS (June 14, 2021), https://www.usa.philips.com/healthcare/e/sleep/communications/src-update#section_2 (accessed June 27, 2021); Royal Philips Update on the recall notification, https://www.philips.com/a-w/about/news/archive/standard/news/press/2021/20210614-philips-issues-recall-notification-to-mitigate-potential-health-risks-related-to-the-sound-abatement-foam-component-in-certain-sleep-and-respiratory-care-devices.html (accessed June 27, 2021).

| Dorma 500 | |
| REMStar SE Auto | |

| Philips Mechanical Respirator Devices<br>Manufactured Before April 26, 2021 Subject to Recall[12] | |
| --- | --- |
| **Device Name/Model Type** | **Type** |
| Trilogy 100 Ventilator | Continuous Ventilator |
| Trilogy 200 Ventilator | |
| Garbin Plus, Aeris, LifeVentVentilator | |
| A-Series BiPAP Hybrid A30 | Continuous Ventilator, Minimum Ventilatory Support, Facility Use |
| Philips A-Series BiPAP V30 Auto | |
| Philips A-Series BiPAP A40 | Continuous Ventilator, Non-life Supporting |
| Philips A-Series BiPAP A30 | |

29.     According to Philips, the PE-PUR Foam used in Recalled Devices put users at risk of suffering from: "[i]rritation (skin, eye, and respiratory tract), inflammatory response, headache, asthma, adverse effects to other organs (e.g. kidneys and liver) and toxic carcinogenic affects."[13]

30.     Philips reported to physicians that PE-PUR Foam particles "may cause irritation and airway inflammation, and this may be particularly important for patients with underlying lung diseases or reduced cardiopulmonary reserve."[14]

31.     Further, Philips reported that "based on lab testing and evaluations, it may be possible that these potential health risks could result in a wide range of potential patient impact, from transient potential injuries, symptoms and complications, as well as possibly serious injury

---

[12] *Id.*

[13] *Id.*

[14] Philips *Sleep and Respiratory Care Update – Clinical information for physicians*, June 14, 2021, philips-recall-clinical-information-for-physicians-and-providers.pdf (accessed June 27, 2021).

which can be life-threatening or cause permanent impairment, or require medical intervention to preclude permanent impairment."[15]

32.     Philips announced that it has received reports of "patient impact" in the Recalled Devices, and announced risks of exposure as including "headache, irritation, inflammation, and respiratory issues."[16]

### IV.     The Health Risks Associated with Use of the Recalled Devices Renders Them Worthless

33.     As a result of the health risks associated with the use of the Recalled Devices, the Recalled Devices have been rendered completely worthless or, at the very least, have been substantially diminished in value.

34.     The information described above, including the now-known health risks of Philips CPAP devices, Bi-Level PAP devices and mechanical ventilators, the recall, and the medical warnings and advice issued by Philips, have rendered the Recalled Devices worthless to patients with sleep apnea and respiratory conditions. Individuals not using life-supporting ventilators should immediately discontinue their user of the Recalled Devices or face serious health risks as grave as organ failure or cancer. If they choose to discontinue use of the Recalled Devices, they must pay for another expensive device in order to receive effective treatment for their sleep apnea and/or respiratory conditions. Individuals using life-supporting ventilators must seek an alternative treatment before discontinuing use of the Recalled Devices.

---

[15] *Id.*

[16] *Philips issues recall notification\* to mitigate potential health risks related to the sound abatement foam component in certain sleep and respiratory care devices*, PHILIPS (June 14, 2021); https://www.philips.com/a-w/about/news/archive/standard/news/press/2021/20210614-philips-issues-recall-notification-to-mitigate-potential-health-risks-related-to-the-sound-abatement-foam-component-in-certain-sleep-and-respiratory-care-devices.html (last accessed July 9, 2021).

35.    Recognizing this, Philips issued the following advice to patients using any of the Recalled Devices:

- "**For patients using BiLevel PAP and CPAP devices:** Discontinue use of affected units and consult with physicians to determine the benefits of continuing therapy and potential risks."[17]

- "**For patients using life-sustaining mechanical ventilator devices: DO NOT discontinue or alter prescribed therapy, without consulting physicians to determine appropriate next steps.**"[18]

36.    As a result of the above, Plaintiff and the Class Members will have to undertake considerable expense replacing the Recalled Devices.

## V.    Philips Unreasonably Delayed its Recall

37.    At no time prior to its Regulatory Update on April 26, 2021, did Philips disclose to purchasers or users of the Recalled Devices that the PE-PUR Foam contained therein may off-gas or degrade upon use. Similarly, prior to the Update, Philips did not disclose any health risks associated with use of the Recalled Devices.

38.    Defendants have not disclosed when they first discovered or received reports from users of their Sleep & Respiratory Care devices "regarding degrade[d]… particles which may enter the device's air pathway and be ingested or inhaled by the user…"[19]

39.    At a minimum, as a result of user reports, Defendants were aware of the off-gassing and degradation of the PE-PUR Foam used in the Recalled Devices at some point prior

---

[17] Medical Device recall notification (U.S. only) / field safety notice (International Markets), PHILIPS RESPIRONICS (June 14, 2021), https://www.usa.philips.com/healthcare/e/sleep/communications/src-update#section_2 (accessed June 27, 2021) (Questions and answers) (emphasis in original).

[18] *Id.*

[19] *Philips issues recall notification\* to mitigate potential health risks related to the sound abatement foam component in certain sleep and respiratory care devices*, PHILIPS (June 14, 2021); https://www.philips.com/a-w/about/news/archive/standard/news/press/2021/20210614-philips-issues-recall-notification-to-mitigate-potential-health-risks-related-to-the-sound-abatement-foam-component-in-certain-sleep-and-respiratory-care-devices.html (Last Accessed July 9, 2021).

to the recall, yet continued to manufacture and sell the Recalled Devices with such awareness. During this period, Defendants unreasonably and unjustly profited from the manufacture and sale of the Recalled Devices and unreasonably put users of the Recalled Devices at risk of development of serious adverse health effects, including organ failure and cancer.

## TOLLING AND ESTOPPEL

### I.    DISCOVERY RULE TOLLING

40.    Plaintiff and the Class Members had no way of knowing about Philips' conduct with respect to the health risks associated with the use of the Recalled Devices.

41.    Neither Plaintiff nor any other members of the Classes, through the exercise of reasonable care, could have discovered the conduct by Philips alleged herein. Further, Plaintiff and members of the Class and Subclass did not discover and did not know of facts that would have caused a reasonable person to suspect that Philips was engaged in the conduct alleged herein.

42.    For these, reasons, all applicable statutes of limitation have been tolled by the discovery rule with respect to claims asserted by Plaintiff, the Class, and Subclass.

### II.    FRAUDULENT CONCEALMENT TOLLING

43.    By failing to provide immediate notice of the adverse health effects associated with continued use of the Recalled Devices, Philips concealed its conduct and the existence of the claims asserted herein from Plaintiff and the members of the Class and Subclass.

44.    Upon information and belief, Philips intended its acts to conceal the facts and claims from Plaintiff and members of the Class and Subclass. Plaintiff and the members of the Class and Subclass were unaware of the facts alleged herein without any fault or lack of diligence on their part and could not have reasonably discovered Defendants' conduct. For this

reason, any statute of limitations that otherwise may apply to the claims of Plaintiff or members of the Classes should be tolled.

## CLASS ACTION ALLEGATIONS

45.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3). Plaintiff seeks class certification on behalf of a class defined as follows (the "Class"):

> **NATIONWIDE CLASS**: All persons in the United States who purchased or used a CPAP, Bi-Level PAP, or Mechanical Ventilator device that was manufactured by Philips before April 26, 2021, and recalled by Philips on June 14, 2021.

46.     In addition to a Nationwide Class, Plaintiff Feick seeks certification on behalf of a subclass defined as follows (the "Pennsylvania Subclass"):

> **PENNSYLVANIA SUBCLASS**: All persons who were or are citizens of the State of Pennsylvania who purchased or used a CPAP, Bi-Level PAP, or Mechanical Ventilator device that was manufactured by Philips before April 26, 2021, and recalled by Philips on June 14, 2021.

47.     Plaintiff reserves the right to modify or refine the definitions of the Class or Subclass based upon discovery of new information and in order to accommodate any of the Court's manageability concerns.

48.     Excluded from the Class and Subclass are: (a) any Judge or Magistrate Judge presiding over this action and members of their staff, as well as members of their families; (b) Defendants' and Defendants' predecessors, parents, successors, heirs, assigns, subsidiaries, and any entity in which any Defendants or their parents have a controlling interest, as well as Defendants' current or former employees, agents, officers, and directors; (c) persons who properly execute and file a timely request for exclusion from the Class or Subclass; (d) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (e)

counsel for Plaintiff and Defendants; and (f) the legal representatives, successors, and assigns of any such excluded persons.

49.     **Numerosity (Rule 23(a)(1))**. The members of the Class and Subclass are so numerous that joinder of individual members herein is impracticable. The exact number of members of the Class and Subclass, as herein identified and described, is not known, but sales figures and the Recall Notice indicate that millions of individuals have purchased the Recalled Devices.

50.     **Commonality (Rule 23(a)(2))**. Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual Class and Subclass members, including the following:

- whether Defendants owed a duty of care to Plaintiff and the Class and Subclass;

- whether Defendants knew or should have known that the PE-PUR Foam used for sound abatement posed health risks;

- whether Defendants wrongfully represented that the PE-PUR Foam used for sound abatement in the Recalled Devices was safe;

- whether the Recalled Devices retained any value post-recall;

- whether Defendants wrongfully represented that the Recalled Devices were safe to use;

- whether Defendants wrongfully failed to disclose that the PE-PUR Foam used for sound abatement in the Recalled Devices posed health risks to Recalled Device users;

- whether Defendants' representations and omissions in advertising, packaging, and/or labeling were false, deceptive, and/or misleading;

15

- whether those representations and omissions were likely to deceive a reasonable consumer;

- whether a reasonable consumer would consider the presence, or risk of, health risks as a material fact in purchasing one of the Recalled Devices;

- whether Defendants had knowledge that those representations and omissions were false, deceptive, and misleading;

- whether Defendants engaged in unfair trade practices;

- whether Defendants engaged in false advertising;

- whether Defendants' conduct was negligent per se;

- whether Defendants made negligent and/or fraudulent misrepresentations and/or omissions; and

- whether Plaintiff and the members of the Class and Subclass are entitled to actual, statutory, and punitive damages.

51.    **Typicality (Rule 23(a)(3))**. Plaintiff's claims are typical of the claims of the other members of the proposed Class and Subclass. Plaintiff and members of the Class and Subclass (as applicable) suffered injuries as a result of Defendants' wrongful conduct that is uniform across the Class and Subclass.

52.    **Adequacy (Rule 23(a)(4))**. Plaintiff's interests are aligned with the Class and Subclass that he seeks to represent. Plaintiff has and will continue to fairly and adequately represent and protect the interests of the members of the Class and Subclass. Plaintiff has retained competent counsel highly experienced in complex litigation and class actions and the types of claims at issue in this litigation, with the necessary resources committed to protecting the interests of the Class and Subclass. Plaintiff has no interests that are antagonistic to those of

the Class and Subclass, and Defendants have no defenses unique to Plaintiff. Plaintiff and his

counsel are committed to vigorously prosecuting this action on behalf of the members of the

Class and Subclass. Neither Plaintiff nor Plaintiff's counsel have any interest adverse to those of

the other members of the Class and Subclass.

53.    **Superiority**. This class action is appropriate for certification because class

proceedings are superior to other available methods for the fair and efficient adjudication of this

controversy, and joinder of all members of the Class and Subclass is impracticable. The

prosecution of separate actions by individual members of the Class and Subclass would impose

heavy burdens upon the Courts and Defendants, would create a risk of inconsistent or varying

adjudications of the questions of law and fact common to members of the Class and Subclass,

and would be dispositive of the interests of the other members not parties to the individual

adjudications or would substantially impair or impede their ability to protect their interests. Class

treatment will create economies of time, effort, and expense and promote uniform decision-

making.

54.    **Manageability.** This proposed class action presents fewer management

difficulties than individual litigation, and provides the benefits of single adjudication, economies

of scale, and comprehensive supervision by a single court.

55.    Class certification, therefore, is appropriate under Fed. R. Civ. P. 23(b)(3)

because the above common questions of law or fact predominate over any questions affecting

individual members of the Class, and a class action is superior to other available methods for the

fair and efficient adjudication of this controversy.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### FRAUDULENT MISREPRESENTATION
### (on behalf of the Nationwide Class or, alternatively, the Subclass)

56.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

57.    Philips failed to advise Plaintiff and the Class and Subclass that the Recalled Devices posed serious health risks to their users and Philips falsely represented to Plaintiff and the Class and Subclass that the Recalled Devices were safe for human use.

58.    Philips intentionally, knowingly, and recklessly made these misrepresentations and omissions to induce Plaintiff and the Class and Subclasses to purchase the Recalled Devices.

59.    Philips knew that its representations and omissions about the Recalled Devices were false in that the Recalled Devices contained PE-PUR Foam and thus were at risk of causing adverse health effects to users of the Recalled Devices, which does not conform to the products' labels, packaging, advertising, and statements. Philips knowingly allowed its packaging, labels, advertisements, promotional materials, and websites to intentionally mislead consumers, such as Plaintiff and the Class and Subclass.

60.    Plaintiff and the Class and Subclass did in fact rely on these omissions and misrepresentations and purchased and used the Recalled Devices to their detriment. Given the deceptive manner in which Philips advertised, represented, and otherwise promoted the Recalled Devices, Plaintiff's and the Class' and Subclass' reliance on Philips' omissions and misrepresentations was justifiable.

61.    As a direct and proximate result of Philips' conduct, Plaintiff and the Class and Subclass have suffered actual damages in that they purchased the Recalled Devices (a) that were worth less than the price they paid, (b) which they would not have purchased at all had they

known of the health risks, including organ failure and cancer, associated with the use of the

Recalled Devices, and (c) which did not conform to the Recalled Devices' labels, packaging,

advertising, and statements.

62.     Plaintiff and the Class and Subclass seek actual damages, attorneys' fees, costs,

and any other just and proper relief available under the laws.

## SECOND CLAIM FOR RELIEF
### FRAUD BY OMISSION
**(on behalf of Nationwide Class or, alternatively, the Subclass)**

63.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

64.     Philips concealed from and failed to disclose to Plaintiffs and the Class and

Subclasses that use of Recalled Devices is accompanied by a risk of adverse health effects,

which does not conform to the products' labels, packaging, advertising, and statements.

65.     Philips was under a duty to disclose to Plaintiffs and the Class and Subclasses the

true quality, characteristics, ingredients and suitability of the Recalled Devices because: (a)

Philips was in a superior position to know the true state of facts about its products; (b) Philips

was in a superior position to know the risks associated with the use of, characteristics of, and

suitability of the Recalled Devices for use by individuals; and (c) Philips knew that Plaintiffs and

the Class and Subclass could not reasonably have been expected to learn or discover prior to

purchasing the Recalled Devices that there were misrepresentations and omissions by Philips in

the packaging, labels, advertising, and websites regarding the health risks associated with use of

these devices.

66.     The facts concealed or not disclosed by Philips to Plaintiffs and the Class and

Subclasses were material in that a reasonable consumer would have considered them important

when deciding whether to purchase the Recalled Devices.

67.     Plaintiffs and the Class and Subclasses justifiably relied on Philips' omissions to their detriment. The detriment is evident from the true quality, characteristics, and risk associated with the use of the Recalled Devices, which is inferior when compared to how the Recalled Devices are advertised and represented by Philips.

68.     As a direct and proximate result of Philips' conduct, Plaintiffs and the Class and Subclasses have suffered actual damages in that they purchased the Recalled Devices (a) that were worth less than the price they paid, (b) which they would not have purchased at all had they known of the health risks associated with the use of the Recalled Devices, and (c) which do not conform to the Recalled Devices' labels, packaging, advertising, and statements.

69.     Plaintiff and the Class and Subclass seek actual damages, attorneys' fees, costs, and any other just and proper relief available under the laws.

**THIRD CLAIM FOR RELIEF**
**NEGLIGENT MISREPRESENTATION**
**(on behalf of the Nationwide Class or, alternatively, the Subclass)**

70.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

71.     Philips had a duty to Plaintiff and the Class and Subclass to exercise reasonable and ordinary care in the developing, testing, manufacture, marketing, distribution, and sale of the Recalled Devices.

72.     Philips breached its duty to Plaintiff and the Class and Subclass by developing, testing, manufacturing, advertising, marketing, distributing, and selling products to Plaintiff and the Class and Subclass that did not have the qualities, characteristics, and suitability for use as advertised by Philips and by failing to promptly remove the Recalled Devices from the marketplace or to take other appropriate remedial action upon becoming aware of the health risks of the Recalled Devices.

73.     Philips knew or should have known that the qualities and characteristics of the

Recalled Devices were not as advertised or suitable for their intended use and were otherwise not

as warranted and represented by Philips. Specifically, Philips knew or should have known that:

(a) the use of the Recalled Devices was accompanied by risk of adverse health effects that do not

conform to the packaging and labeling; (b) the Recalled Devices were adulterated, or at risk of

being adulterated, by the PE-PUR Foam; and (c) the Recalled Devices were otherwise not as

warranted and represented by Philips.

74.     As a direct and proximate result of Philips' conduct, Plaintiff and the Class and

Subclass have suffered actual damages in that they purchased the Recalled Devices (a) that were

worth less than the price they paid, (b) which they would not have purchased at all had they

known they contained PE-PUR Foam that could cause users of the Recalled Devices to suffer

adverse health effects, and (c) which do not conform to the products' labels, packaging,

advertising, and statements.

75.     Plaintiff and the Class and Subclass seek actual damages, attorneys' fees, costs,

and any other just and proper relief available.

## FOURTH CLAIM FOR RELIEF
**UNJUST ENRICHMENT**
**(on behalf of the Nationwide Class or, alternatively, the Subclass)**

76.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

77.     Plaintiff and the Class and Subclass conferred substantial benefits on Philips

through their purchase of the Recalled Devices. Philips knowingly and willingly accepted and

enjoyed these benefits.

78.     Philips either knew or should have known that the payments rendered by Plaintiff

and the Class and Subclass were given with the expectation that the Recalled Devices would

have the qualities, characteristics, and suitability for use represented and warranted by Philips. As such, it would be inequitable for Philips to retain the benefit of the payments under these circumstances.

79.    Philips' acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Philips to retain the benefits without payment of the value to Plaintiff and the Class and Subclass.

80.    Plaintiff and the Class and Subclass are entitled to recover from Philips all amounts wrongfully collected and improperly retained by Defendants, plus interest thereon.

81.    Plaintiff and the Class and Subclass seek actual damages, attorneys' fees, costs, and any other just and proper relief available under the laws.

82.    Defendants' knowledge of the Recalled Devices' deceptive claims and health and safety risks put it on notice that the Defendants' Recalled Devices were not as it advertised.

## FIFTH CLAIM FOR RELIEF
**VIOLATION OF 73 Pa. C.S.A. § 201-I, et seq., PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW AND REQUEST FOR INJUNCTIVE RELIEF**
**(On behalf of the Nationwide Class, or alternatively, the Pennsylvania Subclass, except for Class Members who purchased a Recalled Device for business use only)**

83.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

84.    The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") protects consumers against "unfair or deceptive acts or practices" in connection with the sale or advertisement of any merchandise. 73 Pa. C.S.A. § 201-1, et seq.

85.    Plaintiff and the Proposed Classes are consumers who purchased affected Philips CPAP machines from Defendant and did so primarily for personal, family, or household purposes within the meaning of *73 Pa. C.S.A. § 201-9.2.*

86.    Defendant used and employed unfair methods of competition and/or unfair or deceptive acts or practices within the meaning of *73 Pa. C.S.A.§§ 201-2* and *201-3*. Such unfair methods of competition and/or unfair or deceptive acts or practices include, but are not limited to the following:

a.    Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another (201-2(4)(vii));

b.    Advertising goods or services with intent not to sell them as advertised (201-2(4)(ix));

c.    Failing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made (201-2(4)(xiv)); and

d.    Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding (201-2(4)(xxi));

87.    Plaintiffs Feick and the Proposed Classes relied on Defendants' unfair methods of competition and/or unfair or deceptive acts or practices as set forth herein.

88.    Defendants' unfair methods of competition and/or unfair or deceptive acts or practices did deceive Plaintiff Feick and the Proposed Classes who were, at all times relevant hereto, acting reasonably under the circumstances.

89.    Plaintiff and the Proposed Classes justifiably relied on Defendant's unfair methods of competition and/or unfair or deceptive acts or practices, as set forth herein, and they suffered ascertainable losses as set forth herein.

90.    Plaintiff and the Proposed Classes would not have purchased or used the affected CPAP machines had Defendants' not engaged in prohibited unfair methods of competition and/or unfair or deceptive acts or practices, as set forth herein.

91.    Defendants knew or should have known that the affected CPAP machines were not being sold as warranted, guaranteed, and/or represented by Defendants.

92.    Defendants' concealments, omissions, deceptions, and conduct were and are likely to deceive and likely to cause misunderstanding and did cause Plaintiff Feick and the Proposed Classes to be deceived.

93.    Defendants intended that Plaintiff Feick and the Proposed Classes would rely on its misrepresentations, concealment, warranties, guarantees, deceptions, and/or omissions as discussed herein.

94.    Plaintiff Feick and the Proposed Classes have been damaged as a result of Defendant's violations of the UTPCPL and have suffered actual, ascertainable losses by Defendants' sale of the affected CPAP machines.

95.    Defendants have engaged in unfair, unlawful, and deceptive acts in trade and commerce which have the capacity and tendency to deceive and, in fact, did deceive Plaintiff Feick and the Proposed Classes and damaged Plaintiff Feick and the Proposed Classes.

96.    Defendants committed unlawful, deceptive, and unconscionable trade practice by selling Plaintiff Feick and the Proposed Classes affected CPAP machines.

97.    Defendants' misrepresentations and omissions misled Plaintiff Feick and the Proposed Classes into believing that the affected CPAP machines were safe for their intended use/purposes when they were not.

98.    Because of Defendant's unlawful, deceptive, unfair, and unconscionable trade practice and scheme, Plaintiff Feick and the Proposed Classes have suffered injuries and damages in an amount to be determined at trial.

99.     As a direct and proximate result of Defendants' violations of the UTPCPL as set forth above, Plaintiff Feick and the Proposed Classes have suffered ascertainable losses of money and are therefore entitled to relief, including damages, plus triple damages, and attorney's fees and costs.

**SIXTH CLAIM FOR RELIEF**
**MEDICAL MONITORING**
**(on behalf of the Nationwide Class, or alternatively, the Subclass, except for Class Members who purchased a Recalled Device for business use only)**

100.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

101.    At all relevant times, the Defendants designed, manufactured, assembled, inspected, tested (or not), packaged, labeled, marketed, advertised, promoted, supplied, distributed, sold and/or otherwise placed the Recalled Devices into the stream of commerce, and therefore owed a duty of reasonable care to avoid causing harm to those that used them, such as Plaintiff.

102.    Defendants have reported that users of the Recalled Devices face risks of serious injury from the degradation of PE-PUR Foam contained in the Recalled Devices. Degradation of PE-PUR Foam may be caused by exposure to chemical emissions from the foam material, high heat and high humidity environments in certain regions, and cleaning methods such as ozone may accelerate potential degradation.

103.    When PE-PUR Foam degrades into particles that may enter the device's pathway and be ingested or inhaled by users of the devices, users face significantly increased risks of serious injury that can be life-threatening, cause permanent impairment, and/or require medical intervention to preclude permanent impairment. The potential risks of degraded foam exposure include: irritation (skin, eye, and respiratory tract), inflammatory response, headache, asthma, adverse effects to other organs (*e.g.*, kidneys and liver) and toxic carcinogenic effects.

104.     The off-gassing of chemicals from the PE-PUR Foam contained in the Recalled

Devices poses risks of serious injury that can be life-threatening, cause permanent impairment,

and/or require medical intervention to preclude permanent impairment. The potential risks of

exposure to off-gassing from PE-PUR Foam include: headache/dizziness, irritation (eyes, nose,

respiratory tract, skin), hypersensitivity, nausea/vomiting, toxic and carcinogenic effects.

105.     The absence of visible particles does not mean that PE-PUR Foam breakdown has

not already begun. Philips has reported that lab analysis of the degraded foam reveals the

presence of harmful chemicals including: TDA, TDI, and DEG.[20] TDI is a powerful irritant to

the mucous membranes of the eyes and gastrointestinal and respiratory tracts,[21] and has been

reported to cause Occupational Asthma.[22] Exposure to TDA may result in ataxia, tachycardia,

nausea, vomiting, convulsions, and respiratory depression.[23] TDA can cause chemical cyanosis

(*i.e.*, bluish discoloration of the skin) by converting hemoglobin to methemoglobin. This

compound can also cause fatty degeneration of the liver.[24] TDA and TDI are potential

---

[20] Philips Sleep and Respiratory Care Update; Clinical information for physicians, https://www.philips.com/c-dam/b2bhc/master/landing-pages/src/update/documents/philips-recall-clinical-information-for-physicians-and-providers.pdf (accessed June 27, 2021).

[21] The National Institute for Occupational Safety and Health (NIOSH) Current Intelligence Bulletin 53, *Toluene Diisocyanate (TDI) and Toluenediamine (TDA): Evidence of Carcinogenicity*, DHHS (NIOSH) Publication Number 90-101 (Dec. 1989); *see also* Gunnar Skarping, *et al.*, *Biological monitoring of isocyanates and related amines: Test chamber exposure of humans to toluene diisocyanate*, Dep't of Occupational and Environmental Medicine, University Hospital, S-221 85 Lund, Sweden (1990); https://greenfuture.io/sustainable-living/spray-polyurethane-foam-toxic/.

[22] Bernstein, David I, *Occupational asthma: Definitions, epidemiology, causes, and risk factors*, Wolters Kluwer, UpToDate.com (accessed Jun. 30, 2021).

[23] NIOSH, *Toluene Diisocyanate (TDI) and Toluenediamine (TDA): Evidence of Carcinogenicity*; *see also* Skarping, *Biological monitoring of isocyanates and related amines: Test chamber exposure of humans to toluene diisocyanate*; https://greenfuture.io/sustainable-living/spray-polyurethane-foam-toxic/.

[24] NIOSH, *Toluene Diisocyanate (TDI) and Toluenediamine (TDA): Evidence of Carcinogenicity.*

carcinogens.[25] Repeated exposure to DEG has been associated with damage to the kidneys and renal failure.[26]

106.    As a direct and proximate result of Defendants' conduct, Plaintiff has been exposed to substantially increased risks of serious injury from off-gassing and/or degradation of PE-PUR Foam in the Recalled Devices, which is beyond normal background levels of risk.

107.    As a direct and proximate result of Defendants' conduct, Plaintiff has a significantly increased risk of suffering serious injury or contracting a serious latent disease, and suffering further injury at an unknown date in the future. Such injuries include cancer and organ failure, among others currently unknown or just being discovered.

108.    Monitoring procedures exist that makes the early detection of damage from degraded and/or off-gassed PE-PUR Foam possible. These procedures are different from that normally recommended in the absence of the exposure. These monitoring procedures include non-routine surveillance studies, laboratory testing, and physical examinations, and would be reasonably necessary according to contemporary scientific principles.

109.    Existing medical research indicates that exposure to TDI, TDA, and DEG, which Philips has found to exist in off-gassed or degraded PE-PUR Foam, can cause serious, life-threatening and permanent injuries. Philips has received reports from users of the Recalled

---

[25] *Id.* ("The excess cancer risk for workers exposed to TDI and TDA has not yet been quantified, but the probability of developing cancer should be decreased by minimizing exposure.").

[26] Greg M. Landry, *Diethylene glycol-induced toxicities show marked threshold dose response in rats*, Toxicology and Applied Pharmacology 282 (2015) 244-251 ("DEG has recently been involved in several mass epidemics of renal failure and death world-wide (O'Brien et al., 1998; Schier et al., 2013). DEG poisoning clinically manifests in metabolic acidosis, hepatotoxicity, renal failure, and peripheral neuropathy, with the hallmark being acute renal failure involving proximal tubule cell necrosis and cortical degeneration (Schep et al., 2009)"); Cohen, Jeffrey A., *Demyelinating Diseases of the Peripheral Nerves*, Nerves and Nerve Injuries (2015) ("When consumed, DEG causes severe systemic and neurologic complications, including coma, seizures, peripheral neuropathy, and hepatorenal failure.").

Devices of headache, upper airway irritation, cough, chest pressure and sinus infection. The exposure to the defects inherent in the Recalled Devices has occurred for users, such as Plaintiffs, but the full extent of the injuries will not manifest until later in the Plaintiff's life. Thus, because of Defendants' conduct, it is reasonably necessary that Plaintiff be placed under period diagnostic testing beyond that normally recommended in the absence of use of the Recalled Devices.

110.    Plaintiff demands judgment against Defendants for medical monitoring damages to diagnose injuries caused by the Recalled Devices at an earlier date to allow for timely treatment and prevention of exacerbation of injuries, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Philips as to each and every count, including:

A.    An order certifying this action and the Class and Subclass requested herein as a class action, designating Plaintiff as the representatives of the Class and Subclass, and appointing Plaintiff's counsel as counsel to the Class and Subclass;

B.    An order declaring that Philips' actions constitute: (i) breach of express warranty; (ii) breach of the implied warranty of merchantability; (iii) fraudulent misrepresentation; (iv) fraud by omission; (v) negligent misrepresentation; and (vi) violations of the consumer protection statutes invoked herein, and that Philips is liable to Plaintiff and the Class and Subclass, as described herein, for damages arising therefrom;

C.    A judgment awarding Plaintiff and members of the Class and Subclass all appropriate damages in an amount to be determined at trial;

D.     A judgment awarding Plaintiff and the Class and Subclass medical monitoring damages;

E.     A judgment awarding Plaintiff and the Class and Subclass prejudgment and post-judgment interest, as permitted by law;

F.     A judgment awarding Plaintiff and the Class and Subclass costs and fees, including attorneys' fees, as permitted by law; and

H.     Grant such other legal, equitable or further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury for all issues so triable.


DATED: July 28, 2021                                    Respectfully submitted,


                                                              */s/ Jason M. Leviton*
                                                              Jason M. Leviton
                                                              **BLOCK & LEVITON LLP**
                                                              260 Franklin Street, Sutie 1860
                                                              Boston, MA 02110
                                                              T: 617-398-5600
                                                              F: 617-507-6020
                                                              jason@blockleviton.com

                                                              Marc H. Edelson
                                                              Eric Lechtzin
                                                              **EDELSON LECHTZIN LLP**
                                                              3 Terry Drive, Suite 205
                                                              Newtown, PA 18940
                                                              T: 215-867-2399
                                                              medelson@edelson-law.com
                                                              elechtzin@edelson-law.com

                                                              *Attorneys for Plaintiffs and the Classes*